IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GERALD N. JONES, SR., | ) | CASE NO. 1:18 CV 7 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| CITY OF CLEVELAND, | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION** |

## I.    Introduction

*Pro Se* Plaintiff Gerald N. Jones, Sr. ("Mr. Jones" or "Plaintiff") filed this action against

Defendant City of Cleveland ("the City") in connection with his employment at the Cleveland

Police Department ("the Department"). Mr. Jones was hired as a Data Conversion Operator on

January 22, 2013, and worked at the Department. Plaintiff was terminated on April 26, 2016

(Docket #1-4 at 6), for the allegedly false reason that he may have been armed and was trying to

arrest officers (Docket #1 at 6).

The Complaint describes various interactions and incidents with supervisors and other

Department employees that Mr. Jones alleges constitute race, color, and sex discrimination and

retaliation in violation of Title VII of the Civil Rights Act of 1964 (29 U.S.C. §§ 2000e to 2000e-

17) ("Title VII"), and disability discrimination in violation of the Americans with Disabilities

Act of 1990, 42 U.S.C. §§ 12112 to 12117) ("ADA"). For his state law claims, Plaintiff alleges

violations of Ohio Rev. Code §§ 4117.10(A)(1)(a) and 4117.11(A)(1), (A)(5). (*See id.* at 3, 5.) Mr. Jones also claims "Simple Assault; Aggravated Menacing with an Improvised Weapon; [and] Intimidation" (*id.* at 4).

The alleged discrimination took the form of unequal terms and conditions of employment, termination, and retaliation (*id.* at 4). Mr. Jones seeks $700,000.00 in damages for loss of his civil service career, $12,000.00 in reimbursement for funds he was required to draw upon from his pension for living expenses after he was terminated, and $1.00 for being humiliated, terrorized, treated like an "adversary," and falsely accused of "having a firearm" and "attempting to arrest officers" (*id.* at 7).

Mr. Jones filed a Motion to proceed with this action *in forma pauperis* (Docket #2); that Motion is granted.

## II.    Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982), federal district courts are expressly required under 28 U.S.C. § 1915(e)(2)(B) to screen all *in forma pauperis* actions and to dismiss before service any such action that the Court determines is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. In order to survive scrutiny under § 1915(e)(2)(B), a *pro se* complaint must set forth sufficient factual matter, accepted as true, to state claim to relief that is plausible on its face. *See Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) governs dismissals under 28 U.S.C. § 1915(e)(2)(B)). The factual allegations in the pleading "must be enough to

-2-

raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

Although the plausibility standard is not equivalent to a "'probability requirement,'... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679.

The Complaint refers to, and attaches, documents related to two charges of discrimination that Mr. Jones filed with the Ohio Civil Rights Commission ("OCRC"). (*See* Docket #1 at 6; Docket #1-4). "A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The Court will, therefore, consider those documents when assessing the sufficiency of Mr. Jones' claims. *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 292 (6th Cir. 2015) ("The federal rules treat [exhibits attached to the complaint] as part of the pleadings.").

### III. Discussion

#### A. Title VII Claims

##### 1. *Allegations*

Mr. Jones claims that "[f]or a time, my job was wonderful." (Docket #1 at 6.) He alleges that "[m]y problems began when I stood my ground and asked police personnel – and their relatives to not hit me; grab me; call me names (Geraldine); or intimidate me. I was perceived as a 'rat' – and so, police personnel took it upon themselves to try to get rid of me in order to 'make the department better.'" (*Id.*) The allegations in the Complaint and first OCRC charge state that

he was "terrorized" by police officers who erroneously perceived that Plaintiff was "some type of anti-police activist" and that the Department had a "unified perception that I somehow hated police officers." (*Id.*)

Mr. Jones alleges that he was repeatedly called "Geraldine," which insulted his masculinity (*id.* at 5), and was humiliated in front of his peers when his supervisor, Sgt. Sudy, stated that he "was a man on his period." (Docket #1-4 at 2.) Plaintiff also alleges that he was not given keys to the restroom because of "officer safety." (Docket #1 at 5.) But Plaintiff alleges no facts concerning the Department's restroom key policy, the restroom key status of other Department employees or his co-workers, or how this claim relates to his race or sex.

In his first OCRC charge,[1] Mr. Jones claims that he was subject to a hostile work environment in retaliation for complaining about being insulted as a man and not feeling safe after seeing his supervisor, Sgt. Sudy, allegedly drinking alcohol at work (Docket #1-4 at 2). Plaintiff reported Sgt. Sudy's suspected drinking and emailed a Department form reporting the event (*id.* at 4). He alleges that the Department retaliated against for e-mailing the report "because e-mailed documents exist in the public domain; and cannot be simply altered or destroyed." (*Id.* at 4.) Mr. Jones also claims that Sgt. Sudy repeatedly yelled, threw mail, slammed doors, and stomped her foot at Plaintiff "in an attempt to get me to react inappropriately." (*Id.* at 3.) Plaintiff alleges no facts regarding how retaliation for his safety complaint about Sgt. Sudy's drinking and reporting her, and her attempts to induce him to act inappropriately, relate to his race and sex.

---

[1] In addition to the allegations of retaliation in the OCRC charge filed February 25, 2015, Mr. Jones also filed a second OCRC charge on May 13, 2016, claiming that he was terminated in retaliation for filing the first OCRC charge. (*See* Docket #1-4 at 6.)

Mr. Jones also alleges that while working under the supervision of Sgt. Sealey "(a black female)" and Officer Jose Garcia "(white male)," he voiced his concerns about "the Record Management System migration project. Officer Garcia may have lost face." (*Id.* at 4). Plaintiff claims that during a software demonstration, Officer Garcia hit his hand because he was clicking the mouse too fast and, when the demonstration was continued on a female co-worker's computer, "he treated her with respect." (*Id.*) "Because of the stark difference in the manner that I was treated on the Record Management System migration project from that of my female counterparts, I had to end my detail – thus missing out on a potential increase in position and compensation." (*Id.*) Mr. Jones provides no specific facts regarding Officer Garcia's conduct from which sex discrimination could be inferred – only Mr. Jones' conclusion that his female coworker was treated with more respect and speculation that the difference in treatment was because of his sex. Even if there were specific facts to support such an inference regarding that single incident, Mr. Jones alleges no facts to support his sweeping conclusory statement regarding a "stark difference" in treatment with respect to the entire project or speculation that any such difference in treatment was because of his sex.

Plaintiff also claims "Audrey Cantrell (daughter of Cleveland Police Detective)" changed his work and misrepresented him as incompetent to his peers and Sgt. Sudy (*id.* at 2). In addition, Plaintiff alleges that Lt. Clare "(godmother to Audrey's son and [] department supervisor)" altered his written complaints "to show a preference to Mrs. Cantrell" (as reported to him by his civilian supervisor Cassandra Johnson), and Lt. Clare also attempted to cause Mr. Jones to alter a form authored by Mrs. Cantrell "in retaliation for my complaint against a white female co-worker who was preferred over me." (*Id.* at 3.) Mr. Jones alleges no facts that relate Cantrell's conduct

regarding his work to his race and sex, the nature and subject of his written complaints and how the alteration of those complaints relate to his race and sex, the manner in which a "white female co-worker" was allegedly preferred over him or the nature of his complaint against her, or how Lt. Clare's alleged request to alter a form relates to his race or sex.

In addition, Mr. Jones claims that he received a written warning for exceeding allotted sick time usage, but he has "observed female coworkers commit the same infraction – including excessive tardiness, without receiving any disciplinary action whatsoever." (*Id.* at 4.) Beyond this conclusory statement, Plaintiff alleges no facts regarding the Department's sick time policy, how he knows that females exceeding sick time usage did not receive written warnings, or any facts from which the Court could infer that the Department disciplined Mr. Jones (but not others) because of his race or sex.

Finally, Mr. Jones claims that his overtime work has been limited to certain days and eight hours of overtime on his day off, but "[other] [e]mployees are allowed to work up to twelve (12) hours of overtime on their day off." (*Id.* at 5.) Plaintiff makes no factual allegations concerning the race or sex of the "other employees."

### 2. *Analysis*

Title VII provides that it is unlawful for an employer to discharge or discriminate against an individual on the basis of his race, color, or sex, or to retaliate against an employee who opposes or seeks relief from such discrimination. *See Green v. Brennan*, 136 S. Ct. 1769, 1773-74 (2016). Mr. Jones' allegations of race and sex discrimination and retaliation, accepted as true, are insufficient to state a plausible claim for relief.

Plaintiff's allegations of race and sex discrimination and retaliation are speculative and conclusory, and do not permit the Court to infer more than a mere possibility that the Department's actions were based upon discrimination. Indeed, Mr. Jones alleges a number of reasons, other than race and sex discrimination, for the alleged conduct at issue. For example, Mr. Jones claims that the Department was trying to get rid of him because he was considered considered a "rat," and his report regarding Sgt. Sudy sparked retaliation in the Department. Mr. Jones does not allege any facts sufficient to plausibly link the Department's perception of him as a "rat," or alleged retaliation for reporting Sgt. Sudy, to his race, sex, or protected activity.

Further, Mr. Jones states that "[t]he relationships that I had made with the officers over the years were destroyed – and replaced with a unified perception that I somehow hated police officers. The hostility of SGT. KILABANE; SGT. MONTANARO; and LT. CLARE eroded everything I had worked for. ... It was a great misfortune all the way around." (Docket #1 at 6 (capitalization in original).) But Plaintiff alleges no facts from which the Court could infer that the hostility of these officers was based upon his race and sex. Title VII was not meant to create a general civility code in the workplace. *Clark v. United Parcel Service, Inc.,* 400 F.3d 341, 352 (6th Cir. 2005) (citation omitted). Nor does Title VII exist to ensure that co-workers must enjoy working together – upsetting interactions with co-workers does not always equal unlawful behavior. *Lott v. Havar, Inc.,* No. 2:12-CV-608, 2013 WL 2468351, at *8 (S.D. Ohio June 7, 2013) (citations omitted). Accepting Plaintiff's factual allegations as true, they are insufficient to permit the Court to infer more than a mere possibility that the conduct at issue was prohibited race and sex discrimination.

With respect to Mr. Jones' claim that he was terminated in retaliation for filing his first OCRC charge more than one year earlier (Docket #1-4 at 6), Plaintiff does not allege any facts from which the Court could infer a causal link between the two in order to state a plausible retaliation claim. *See Hamilton v. Starcom Mediavest Grp.*, 522 F.3d 623, 629 (6th Cir. 2008) ("[T]here is a consensus that proximity alone will not suffice where the adverse action occurs more than a few months-let alone nine months-after the protected conduct.") (citation omitted).

Mr. Jones' factual allegations are insufficient to state a plausible claim for relief under Title VII, and those claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### B.    Disability Discrimination

The ADA prohibits employment discrimination against individuals with mental and physical disabilities. For his disability claim, Mr. Jones alleges that he was told that his complaints made the officers feel unsafe, and a psychological evaluation was a condition of his continued employment. Plaintiff also alleges that his co-workers called him "crazy."[2] (Docket #1 at 5.)

Even assuming the alleged facts to be true, Mr. Jones does not allege facts from which the Court could infer that he is disabled as defined by the ADA. Therefore, Mr. Jones fails to state a plausible claim for relief under the ADA, and that claim must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). *See Brunson v. Montgomery Cty.*, No. 3:16-CV-00368, 2017 WL 3301574, at *4 (S.D. Ohio Aug. 3, 2017) (plaintiff's ADA claim dismissed where the proposed amended complaint fails to raise a plausible assertion that his back and neck injuries constitute a disability under the ADA), *report and recommendation adopted,* No. 3:16CV00368, 2017 WL 3581095

---

[2] The pleadings do not reflect that Plaintiff filed a charge of disability discrimination with the OCRC.

(S.D. Ohio Aug. 18, 2017); *Weese, v. Kalamazoo Metro Transit Serv.*, No. 1:17-CV-747, 2017

WL 9481035, at *2 (W.D. Mich. Sept. 15, 2017) (Plaintiffs fail to state a plausible claim for relief

under 28 U.S.C. § 1915(e)(2)(B) for violation of the ADA where they fail to identify their alleged

disabilities.) *report and recommendation adopted sub nom. Weese v. Kalamazoo Metro Transit*

*Serv.*, No. 1:17-CV-747, 2017 WL 4585610 (W.D. Mich. Oct. 16, 2017).

### C.    State Law Claims

Based upon the pleadings, it appears that the Court lacks diversity jurisdiction over

Plaintiff's state law claims. *See* 28 U.S.C. § 1332. The Court nevertheless has discretion to

exercise jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a), which provides that:

> [I]n any civil action of which the district courts have original jurisdiction, the district
> courts shall have supplemental jurisdiction over all other claims that are so related to
> the claims in the action within such original jurisdiction that they form part of the
> same case or controversy under Article III of the United States Constitution.

Here, the Court has original jurisdiction over Mr. Jones' Title VII and ADA claims pursuant

to 28 U.S.C. § 1331. The Court may, nevertheless, decline to exercise supplemental jurisdiction

over a state law claim under subsection (a) pursuant to 28 U.S.C. § 1367(c) if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the
> district court has original jurisdiction, or
> (3) the district court has dismissed all claims over which it has original jurisdiction,
> or
> (4) in exceptional circumstances, there are other compelling reasons for declining
> jurisdiction.

The determination of whether to accept or decline supplemental jurisdiction is left to the

sound discretion of the Court. *See Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254

(6th Cir. 1996). In exercising this discretion, the Court considers issues of judicial economy,

convenience, fairness, and comity. *Id.*

"[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Musson Theatrical, Inc.*, 89 F.3d at 254–55 ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims[.]") (collecting cases).

Here, all of Mr. Jones' federal claims have been dismissed. The Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, Mr. Jones' state law claims are dismissed without prejudice.

## III. Conclusion

For all of the foregoing reasons, Mr. Jones' Title VII and ADA claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim. Mr. Jones' state law claims are dismissed without prejudice.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision may not be taken in good faith. This case is hereby TERMINATED.

**IT IS SO ORDERED**.

DONALD C. NUGENT
United States District Judge

DATED: *June 25, 2018*